NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SHEILA JACKSON, *Petitioner Employee,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

TRANS STATES AIRLINES, *Respondent Employer,*

STARR INDEMNITY AND LIABILITY CO., *Respondent Carrier.*

No. 1 CA-IC 20-0018
FILED 10-28-2020

Special Action - Industrial Commission
ICA Claim No. 20181-770214
Carrier Claim No. 005807-000518-WC-01
The Honorable Jeanne Steiner, Administrative Law Judge

**AFFIRMED**

COUNSEL

Thomas C. Wilmer PC, Phoenix
By Thomas C. Wilmer
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Jardine, Baker, Hickman & Houston, PLLC, Phoenix
By Stephen C. Baker
*Counsel for Respondent Employer and Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge D. Steven Williams and Judge David D. Weinzweig joined.

---

**T H U M M A**, Judge:

¶1 Petitioner Sheila Jackson seeks review of an Industrial Commission of Arizona (ICA) award closing her claim with no permanent impairment. She raises one issue: whether the administrative law judge (ALJ) erred by denying her motion to postpone setting further hearing dates to give her time to attend more doctor appointments and develop evidence for her case. Because Jackson has shown no abuse of discretion, the Award is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2 Jackson, a flight attendant for Respondent Trans States Airlines, was injured in 2018 when a suitcase fell from an overhead bin, hitting her in the chest and left shoulder. She sought, and received, benefits and treatment as a result. In February 2019, Respondent Starr Indemnity and Liability Co. issued a notice that it was closing her claim with no permanent impairment. Jackson protested, claiming that her condition was not yet medically stationary. Her case was set for hearing by an ALJ.

¶3 The ALJ heard Jackson's testimony on June 14, 2019. At the end of her testimony, counsel and the ALJ discussed scheduling for testimony of expert witnesses. Jackson's counsel confirmed that he wanted to call two experts: her treating doctor, Dr. Jeffrey Scott, and one other, but he was not sure about the identity of the other doctor because Jackson was scheduled to see a specialist in late July 2019. As he put it, "things are still evolving." The ALJ affirmed that she would schedule Dr. Scott and agreed

2

to wait to schedule another doctor until she heard from Jackson's counsel, which both she and Jackson's counsel expected to be after Jackson saw the specialist in late July. No order was issued memorializing the agreements or setting specific dates or deadlines.

¶4            On August 1, 2019, having received no communication from Jackson's counsel, the ALJ scheduled the testimony of Dr. Scott and Respondents' two medical experts for September 19, October 9, and October 10, respectively. The ICA issued subpoenas for those three witnesses. On August 20, 2019, apparently not yet having received the notices of further hearing dates,[1] Jackson's counsel sent a letter to the ALJ requesting a postponement because the specialist, which Jackson had seen in late July and again in mid-August, was recommending surgery and had referred Jackson to another doctor for neck problems. There is no indication in that letter that the neck problems were associated with the work injury. The letter also does not request subpoenas for either doctor mentioned. By letter dated August 27, 2019, the ALJ denied the request to postpone further hearing.

¶5            In early September 2019, Jackson's counsel requested reconsideration of the denial of postponement and noted his "assumption is that the Court is denying [Jackson]'s request for additional subpoenas." On September 9, 2019, the ALJ affirmed her denial of postponement, describing her understanding of the agreement made at the June 14, 2019 hearing:

> [Jackson's counsel] asked for time to decide on medical witnesses and was to let me know by the end of July if he wanted someone other than Dr. Scott. I waited until July 30, 2019 to send the file for further scheduling. The three doctors were set and notices went out in mid-August. I did not receive [Jackson]'s request for [the other two medical witnesses] until August 26, 2019.

The hearings moved forward as scheduled, and the three witnesses testified. The ALJ's Award found Jackson was medically stationary and not permanently impaired. Meanwhile, Jackson petitioned to reopen her claim based on the new information gained from the two specialists she had seen in July and August 2019. That proceeding was stayed pending the outcome

---

[1] The record shows that notices and subpoenas for those witnesses were signed by the ALJ on August 1, 2019.

of her case protesting the closure of her claim. Upon administrative review, the ALJ affirmed the Award, and Jackson timely brought this statutory special action.

## DISCUSSION

**¶6**  An ICA ALJ "is not bound by common law or statutory rules of evidence or by technical or formal rules of procedure and may conduct the hearing in any manner that will achieve substantial justice." A.R.S. § 23-941(F) (2020).[2] This court reviews procedural rulings for an abuse of discretion. *Unisource Corp. v. Indus. Comm'n*, 184 Ariz. 451, 455 (App. 1995).

**¶7**  The ALJ had the discretion to issue subpoenas for the testimony of medical expert witnesses and to continue a hearing on a showing of good cause. Ariz. Admin. Code (A.A.C.) R20-5-141(A)(2) & -156(A). Jackson argues that the ALJ erred by not postponing the setting of further hearing dates to allow her time to gather more evidence. For support, Jackson relies on *Amey v. Indus. Comm'n*, 156 Ariz. 390 (App. 1988). *Amey*, however, is distinguishable.

**¶8**  In *Amey*, after a timely request, a subpoena was issued for the testimony of the claimant's doctor, but the doctor failed to appear at the first hearing session due to a scheduling error. His testimony was reset for a later date. Just before that date, the claimant was admitted to the hospital. At the rescheduled hearing session, the ALJ excluded any evidence concerning evaluation or treatment of claimant that took place after the first hearing session. Noting the general rule is that a fact finder should be able to consider "all pertinent data available as of the date of the hearing," *Amey* concluded the ALJ's ruling was arbitrary and may have denied the claimant substantial justice. 156 Ariz. at 393. Accordingly, *Amey* set aside the award. *Id.*

**¶9**  *Amey* does not govern this case. Unlike *Amey*, here there were no timely subpoena requests for Jackson's two doctors, meaning no subpoenas were issued and they did not testify. Instead, the issue here is whether the ALJ abused her discretion by denying the request to delay the process while Jackson gathered more evidence. Rule 141, which *Amey* relied on, 156 Ariz. at 392, does not apply here because no subpoenas for the doctors were requested or issued, *see* A.A.C. R20-5-141(B) (allowing a hearing to be continued "because a subpoenaed witness fails to appear" if

---

[2] Absent material revisions after the relevant date, statutes and rules cited refer to the current version unless otherwise indicated.

a specified showing is made). Instead, Rule 156 allowed the ALJ to continue the hearing on Jackson's request if she showed good cause to do so. *See* A.A.C. R20-5-156(A). That issue is within the discretion of the ALJ, and Jackson has not shown that the ALJ acted arbitrarily or abused her discretion.

**¶10** Hindsight suggests that greater clarity in documenting the understanding between Jackson's counsel and the ALJ, which took place at the end of the June 14 hearing, could have avoided the misunderstanding. That documentation could have either been provided by the ALJ to the parties or by Jackson's counsel to the other parties and the ALJ. None of that, unfortunately, happened. It also appears that the written transcript of the first hearing session was made available about two weeks after it was held. Each participant was apparently clear in their mind and acted accordingly. The ALJ was not responsible for any misunderstanding that Jackson's counsel may have had as a result. Accordingly, Jackson has not shown the ALJ abused her discretion.

## CONCLUSION

**¶11** The Award is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA